Robert L. Levy
BANTLE & LEVY LLP
99 Park Avenue, Suite 1510
New York, New York 10016
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

RACHEL ISAAC-MENARD,

        Plaintiff,

- against -

ADELPHI UNIVERSITY and VIOLETA ILIK,

        Defendants.

----------------------------------------------------------------------x

No. ___-CV-____
ECF Case

**COMPLAINT
AND JURY DEMAND**

Plaintiff Rachel Isaac-Menard, by her attorneys, Bantle & Levy LLP, as for her complaint against Defendants, Adelphi University and Violeta Ilik, alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for employment discrimination based on disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. (the "ADA"), and the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.* (the "NYSHRL").  Plaintiff seeks declaratory and injunctive relief and damages.

2.    Plaintiff Rachel Isaac-Menard ("Isaac-Menard") is a long-time employee of defendant Adelphi University ("Adelphi" or the "University") where she has served as Distance Education and Emerging Technologies Coordinator and achieved the faculty rank of Associate Professor.

3.      Throughout her employment with Adelphi Isaac-Menard has suffered from anxiety, depression and panic attacks. Despite these mental health challenges she has amassed a stellar record of performance at Adelphi that resulted in numerous expansions of her responsibilities, a promotion and the grant of tenure by the University.

4.      In August 2018, Isaac-Menard transitioned to performing her job responsibilities for Adelphi fully remotely. Subsequent to her transition to full-time remote work, Isaac-Menard continued to be consistently recognized as a top performer by Adelphi.

5.      Due to the public health impact of the Covid-pandemic, in or about March 2020 Adelphi effectively closed its campus and transitioned most of its staff to full-time remote work.

6.      On or about April 30, 2021, Adelphi announced a plan to return to "predominantly in-person teaching and learning." The announcement expressly provided that workplace accommodations were available for those employees who needed to remain working at home due to disabling medical conditions.

7.      Subsequent to Adelphi's announcement, and consistent with its terms, Isaac-Menard formally requested that Adelphi accommodate her anxiety disorder and depression by allowing her to continue working remotely on a full-time basis, as she had been doing since August 2018. Menard's request for a reasonable accommodation was supported by significant documentation describing the medical basis for, and necessity of, the accommodation.

8.      Despite Isaac-Menard's multi-year history of fully and successfully performing her job responsibilities remotely, Adelphi summarily rejected her request without engaging in an interactive process with Isaac-Menard and without providing any substantive explanation as to why continued full-time remote employment imposed an undue burden on the University.

9. Based on Adelphi's denial of her request for a reasonable accommodation, Isaac-Menard was forced to take disability leave from Adelphi commencing in June 2021.

10. Since the conclusion of that leave in December 2021, Adelphi has maintained Isaac-Menard in contractual limbo in which her employment has not been terminated but she does not receive salary or benefits from the University.

11. As a result of Adelphi's failure and refusal to provide Isaac-Menard a reasonable accommodation that would enable her to resume active employment, Isaac-Menard has suffered significant financial, emotional and reputational harm, and her career and professional trajectory have been unduly undermined and stalled.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiff's ADA claims under 42 U.S.C. § 12117(a) (citing 42 U.S.C. § 2000e-5) and 28 U.S.C. § 1331.

13. Venue in this District is proper pursuant to 42 U.S.C. § 12117(a) (citing 42 U.S.C. § 2000e-5(f)(3)) in that the events in violation of the ADA took place in the State of New York.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) as all claims share a common nucleus of operative fact as to form part of the same case or controversy.

15. All conditions precedent to jurisdiction under § 107 of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706 of Title VII, 42 U.S.C. § 2000e-5, have been complied with:

   a. On or about December 20, 2021, Isaac-Menard filed a Charge of Discrimination on the basis of disability with the Equal Employment Opportunity Commission

("EEOC") within 300 days of the adverse actions of which she complains in this action.

b. A notification of right to sue was issued by the EEOC and received by Isaac-Menard on or about December 21, 2022.

c. This complaint has been filed within 90 days of Isaac-Menard's receipt of the EEOC's notification of right to sue.

## PARTIES

16. Isaac-Menard is a citizen of the State of Florida and currently resides in Hollywood, Florida.

17. Upon information and belief, defendant Adelphi is a New York not-for-profit educational institution with its main campus at 1 South Ave, Garden City, New York 11545.

18. At all times relevant herein, Adelphi was an employer engaged in industry affecting commerce within the meaning of the ADA, 42 U.S.C. § 12111(5)(A) and (7).

19. At all times relevant herein, Adelphi was and is an employer within the meaning of the NYSHRL, N.Y. Exec. L § 292.

20. Upon information and belief, defendant Violeta Ilik is Adelphi's Dean of University Libraries and a citizen of the State of New York, residing in New York City, New York.

## STATEMENT OF FACTS

21. Plaintiff Rachel Isaac-Menard is a highly educated and experienced academic, librarian and distance learning specialist with approximately twenty-years of experience working for a variety of universities in the United States and Canada.

22. Isaac-Menard received a Bachelor of Science degree in Psychology (2004), a Masters in Art History (2007), a Masters of Information Science (2010) from the University of Toronto and a Ph.D. in Information Science from the University of South Africa (2017).

Isaac-Menard's History of Job Expansion and Promotion at Adelphi

23. Isaac-Menard commenced employment with Adelphi in September 2013 as a Reference/Web Services Librarian reporting to then-Dean of University Libraries, Brian Lym.

24. As a Reference/Web Services Librarian, Isaac-Menard was responsible for supporting students by providing research and reference services, developing web-based services and applications, and overseeing the library website.

25. In addition to these responsibilities, Isaac-Menard developed the library portion of Adelphi's e-campus, chaired and coordinated several committees, and initiated Adelphi's first "hackathon" to develop a mobile app for the library, all while acting as the liaison librarian for Anthropology, African, Black, and Caribbean studies, Levermore Global Scholars, and the College of Professional and Continuing Studies.

26. In October 2015, due to Isaac-Menard's successful performance and her increased engagement with university-wide technology committees, Adelphi changed her responsibilities to increase the focus on technology and updated her title to Reference Librarian/Emerging Technologies Coordinator.

27. In January 2017, Adelphi transitioned Isaac-Menard to the position of Emerging Technologies Coordinator and her reference duties were replaced with an expanded portfolio of technology-related initiatives.

28. In or about August 2018, Isaac-Menard's technology-related responsibilities were further expanded and she was named Distance Education and Emerging Technologies

Coordinator at Adelphi. In that capacity, Isaac-Menard's responsibilities included providing coordination and direction to the library faculty on technology-based developments; the management and evolution of the library website; and the evaluation of digital applications and other web-based services.

29. In June 2019, based on her extremely strong record of performance, Isaac-Menard was promoted by Adelphi to the faculty rank of Associate Professor and granted her tenure.

30. Isaac-Menard's tenure application and promotion was supported by a glowing recommendation from Adelphi's Dean Lym.

Isaac-Menard Seamlessly Transitions to Full-Time Remote Work at Adelphi

31. Isaac-Menard has suffered from anxiety and depression for much of her adult life, including throughout her employment at Adelphi.

32. Isaac-Menard disclosed her medical conditions to Dean Lym in or about November 2015 after being subjected to bullying at Adelphi triggered heightened feelings of anxiety and depression.

33. In or about November 2015, Isaac-Menard sought, and was granted, a short medical leave due to her heightened feelings of anxiety and depression.

34. During this time, Dean Lym fully supported Isaac-Menard's efforts to manage her medical issues and encouraged her to do what was needed to "tak[e] care of yourself."

35. In or about December 2015, Isaac-Menard was formally diagnosed with depression.

36. Over the next several years, Isaac-Menard continued to experience and receive treatment for anxiety and depression, but was able to fully perform her duties at Adelphi, garner excellent performance reviews, and remain actively employed without the need for additional

medical leave.

37. During the Fall 2017 semester, Isaac-Menard again experienced increased symptoms of anxiety and depression, including suffering from panic attacks.

38. After a discussion of her medical circumstances, Dean Lym permitted Isaac-Menard to attend certain meetings virtually as an accommodation of her mental health conditions.

39. Thereafter, in or about December 2017 or January 2018, Dean Lym and Isaac-Menard agreed that Isaac-Menard would work remotely two days per week.

40. Following her transition to part-time remote work, Isaac-Menard became the first non-tenured faculty member to be granted the prestigious Viret Fellowship.

41. In August 2018, after being named Distance Education and Emerging Technologies Coordinator, Isaac-Menard transitioned to working remotely on a full-time basis.

42. Isaac-Menard's transition to full-time remote work pre-dated the advent of the Covid-pandemic by more than eighteen (18) months and was completely unrelated to any campus-wide employment initiatives at Adelphi.

43. Following her transition to full-time remote work, Isaac-Menard continued to be consistently recognized as a top performer by Adelphi, including receiving highly positive performance assessments from Dean Lym and Dean Debbi Smith.

44. Following her transition to full-time remote work, Isaac-Menard received no negative feedback on her performance associated with working remotely, or otherwise, from Dean Lym.

45. Isaac-Menard was granted her tenure and promoted to the faculty rank of Associate Professor almost one full year after she started working remotely.

Isaac-Menard is Diagnosed with Generalized Anxiety Disorder

46. In or about November 2020, Isaac-Menard was diagnosed with generalized anxiety disorder ("GAD"), a second mental health condition distinct from her prior diagnosis of depression.

47. At all relevant times herein, Isaac-Menard's GAD and depressive disorder substantially impaired her ability to maintain certain of her daily routines, work or otherwise interact with people in-person in public settings, maintain a consistent and healthy sleep schedule, and, at times, to breathe.

48. Plaintiff's GAD and depressive disorder qualify as covered impairments and disabilities under the ADA and NYSHRL.

49. Because staying home significantly abates the frequency and intensity of her GAD and depressive disorder, at all relevant times herein Isaac-Menard substantially limited her in-person interactions with people in public settings, spent an overwhelming amount of time at home and began taking several medications to address her anxiety, depression, panic attacks and insomnia.

50. Based on her mental health conditions, Isaac-Menard's treating psychologist recommended that she take all appropriate and necessary steps to minimize her forays into public and in-person interactions with people until such time as treatment yielded a significant reduction in her mental health issues.

51. Because working from home enables Isaac-Menard to devote increased mental and physical energy to the performance of basic life functions, including her employment duties and other interpersonal communication, her longstanding full-time remote work arrangement enabled Isaac-Menard to successfully perform the essential functions of her job at Adelphi,

excel in the performance of her duties at Adelphi, and successfully manage her mental health conditions while receiving treatment.

<u>Adelphi Reflexively Denies Isaac-Menard's Request for a Reasonable Accommodation in 2021</u>

52. In or about March 2020, Adelphi transitioned the overwhelming majority of its faculty and staff to remote work due to the advent of the Covid-pandemic.

53. Adelphi's transition to campus-wide remote work had little to no impact on Isaac-Menard's performance of her duties for Adelphi since she already was established as a full-time remote employee.

54. In or about July 2020, Violeta Ilik became Adelphi's Dean of University Libraries, and Isaac-Menard's direct supervisor.

55. Isaac-Menard's strong performance at Adelphi continued after Dean Ilik became her direct supervisor, who raised no concerns with Isaac-Menard about her performance during the time Adelphi maintained a Covid-related virtual campus.

56. On April 30, 2021, Adelphi issued a campus-wide announcement stating that Adelphi planned to return to "predominantly in-person teaching and learning" as of the beginning of the Fall 2021 semester.

57. Adelphi's announcement expressly contemplated the continuation of some remote work arrangements "where business and academic needs can be met" and the grant of workplace accommodations for those employees who needed to remain working at home due to suffering from disabling conditions covered by the ADA.

58. At the time of this announcement, neither Dean Ilik nor Adelphi's Human Resources Department advised Isaac-Menard that her longstanding arrangement of full-time remote employment would be impacted by the University's plans.

59. On or about May 20, 2021, Dean Ilik summoned Isaac-Menard into a video-meeting in which she claimed that Isaac-Menard was not meeting performance expectations (the "May 20 Meeting").

60. Dean Ilik's tone in the May 20 Meeting was unduly hostile, accusatory and aggressive.

61. Dean Ilik's feedback was the first negative performance critique that Isaac-Menard received during her then eight-year tenure at Adelphi, including the first negative appraisal from Dean Ilik in the approximately ten months since she had become Isaac-Menard's direct supervisor.

62. Consistent with Dean Ilik's documented reputation for fabricating unfounded performance issues, none of the performance criticisms leveled by her in the May 20 Meeting had previously been mentioned to Isaac-Menard or documented, and several significantly misstated the scope of Isaac-Menard's responsibilities and mischaracterized her performance.

63. Among other issues raised, Dean Ilik criticized Isaac-Menard's longstanding and previously accepted methodology for providing library liaison services, including coordinating professor requests for materials via email, responding to student questions via online chat and providing remote instruction sessions as requested.

64. Despite the fact that Isaac-Menard had been successfully providing these services fully remotely since August 2018, Dean Ilik advised Isaac-Menard that she wanted to change her job description to include extra instruction duties, including instruction for predominantly in-person departments, a change that would put Isaac-Menard's full-time remote work status under threat.

65. As a result of Dean Ilik's hostile and aggressive tone in the May 20 Meeting, Isaac-Menard suffered a panic attack with breathing difficulties in the immediate aftermath of the meeting and, thereafter, heightened feelings of anxiety and depression.

66. Later that day, Isaac-Menard notified Adelphi's Human Resources Department that a negative interaction with Dean Ilik had caused her to have a panic attack and that she was going to her doctor the following day to get treatment.

67. On May 21, 2021, Isaac-Menard saw her treating doctor and was prescribed additional medication for her GAD and insomnia, and advised to take sick leave for one-week.

68. On May 23, 2021, Isaac-Menard disclosed her GAD diagnosis to Adelphi and commenced medical leave.

69. On or about June 1, 2021, Isaac-Menard notified Adelphi that she intended to request a reasonable accommodation permitting her to continue to perform her job duties pursuant to a full-time remote work arrangement, as she had done successfully for the prior three years.

70. On or about June 2, 2021, Isaac-Menard formally submitted her request for an accommodation, including ample medical documentation demonstrating the basis of the requested accommodation.

71. On or about June 25, 2021, Adelphi, in consultation with Dean Ilik, summarily and reflexively denied Isaac-Menard's request for an accommodation.

72. In denying Isaac-Menard's request for an accommodation, Adelphi failed and refused to engage in an interactive process with Isaac-Menard and her medical providers to determine the appropriateness of the accommodation or to ascertain if an alternative accommodation was available.

73. Rather than engaging in an interactive process, Adelphi communications with Isaac-Menard's medical providers was limited to a single request for the completion of a medical inquiry questionnaire with no further communication or follow-up after the questionnaire was submitted.

74. Adelphi's denial of Isaac-Menard's request for a reasonable accommodation was particularly troubling and problematic given that Adelphi was permitting certain other University personnel to continue to work fully remotely, including at least two members of the Library staff with responsibilities similar to Isaac-Menard.

75. Dean Ilik subsequently sought to use the changes to Isaac-Menard's responsibilities she discussed with her at the May 20 Meeting to justify Adelphi's refusal of Isaac-Menard's request to remain full-time remote as a reasonable accommodation for her disabling medical conditions.

76. On July 1, 2021, Dean Ilik purported to rescind prior "telework agreements" with Library personnel, who were collectively advised that they would be required to work on campus at least two days per week.

77. On or about July 15, Dean Ilik specifically targeted those library faculty with full-time remote agreements by directing that those faculty would need to work in person at least two days per week.

78. Upon information and belief, at the time Dean Ilik issued that directive Isaac-Menard was the only full time library faculty member with a full-time remote work arrangement and, therefore, the only employee impacted by this purported change in policy.

79. Upon information and belief, Dean Ilik's issuance and implementation of this directive was a callous attempt to justify Adelphi's decision to refuse Isaac-Menard's request for reasonable accommodation and to frustrate her assertion of her statutorily protected rights.

80. Upon information and belief, Dean Ilik's July 2021 revision of the telework policy for library staff was done in retaliation for Isaac-Menard's disclosure of her disabling condition and related request for an accommodation.

81. Dean Ilik's participation in the denial of Isaac-Menard's request for a reasonable accommodation and refusal to engage in the interactive process constituted aiding and abetting discrimination on the basis of Isaac-Menard's disability in violation of applicable law.

Isaac-Menard Is Forced to Take Disability Leave

82. Her request for reasonable accommodation having been summarily denied by Adelphi, Isaac-Menard was forced to take short-term disability leave commencing on or about June 17, 2021.

83. During her disability leave, Isaac-Menard saw a psychologist who reaffirmed her diagnosis of major depressive disorder, and also diagnosed her with panic attacks and insomnia.

84. Throughout her disability leave, which ultimately was extended through December 17, 2021, Isaac-Menard, with the assistance of the Adelphi chapter of the AAUP, unsuccessfully sought to get Adelphi to recognize her disability and provide her with a reasonable accommodation.

85. Based on the advice of her medical providers, Isaac-Menard duly advised Adelphi that she was not medically able to resume on campus employment at the conclusion of her disability leave and would require an accommodation.

86. Adelphi continued to refuse the request for accommodation and advised Isaac-Menard that unless she was prepared to be on campus at least two days per week she needed to resign her employment. Isaac-Menard refused to do so.

87. On or about December 31, 2021, at or about the conclusion of her disability leave, Adelphi removed Isaac-Menard from the University payroll system and terminated her employment-based health benefits.

88. As a result of Adelphi's actions, since on or about December 31, 2021 Isaac-Menard has not received salary or benefits from Adelphi.

89. Despite denying Isaac-Menard salary and benefits, however, Adelphi has not initiated proceedings pursuant to Adelphi's collective bargaining agreement to vacate her tenure and terminate her employment. Thus, Isaac-Menard effectively remains in a contractual limbo in which she has neither resigned her employment nor has been formally terminated by the University.

90. The discriminatory and retaliatory actions of Defendants described above were undertaken willfully, intentionally, maliciously, and with reckless indifference to Isaac-Menard's protected rights.

91. As a result of Defendants' discriminatory, retaliatory and willful failure to accommodate her disability and related employment actions, Isaac-Menard has been denied income and benefits, as well as continuing opportunities for promotion, advancement, and recognition.

92. As a result of Defendants' discriminatory, retaliatory and willful failure to accommodate her disability, Isaac-Menard has sustained significant mental and emotional harm and distress.

## FIRST CAUSE OF ACTION
*Disability Discrimination in Violation of the ADA Against Adelphi*

93. Plaintiff repeats and realleges the allegations in paragraphs 1 through 93 as if fully set forth herein.

94. As a result of its aforesaid acts, Defendant Adelphi has discriminated against Plaintiff on account of her disability in violation of the Americans with Disabilities Act §12112(a)-(b).

95. As a result of Adelphi's discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## SECOND CAUSE OF ACTION
*Disability Discrimination in Violation of the NYSHRL Against Adelphi*

96. Plaintiff repeats and realleges the allegations in paragraphs 1 through 96 as if fully set forth herein.

97. As a result of its aforesaid acts, Defendant Adelphi discriminated against Plaintiff on account of her disability in violation of the New York State Human Rights Law §296(1)(a).

98. As a result of Adelphi's discriminatory and adverse acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## THIRD CAUSE OF ACTION
*Retaliation in Violation of the Americans with Disabilities Act Against Adelphi*

99. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 99 as if fully set forth herein.

100. As a result of its aforesaid acts, Defendant Adelphi retaliated against Plaintiff for her protected activity in violation of 42 U.S.C. §12203(a).

101. As a result of Adelphi's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## FOURTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL Against Adelphi*

102. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 102 as if fully set forth herein.

103. As a result of its aforesaid acts, Defendant Adelphi retaliated against Plaintiff for her protected activity in violation of the New York State Human Rights Law §296(7).

104. As a result of Adelphi's retaliatory and adverse acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## FIFTH CAUSE OF ACTION
*Aiding, Abetting, Inciting, Compelling, and Coercing Discrimination and Retaliation in violation of the NYSHRL Against Violeta Ilik*

105. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 105 as if fully set forth herein.

106. As a result of the foregoing, Defendant Violeta Ilik aided, abetted, incited, compelled, and coerced discrimination and retaliation against Plaintiff on the basis of her disability in violation of the New York State Human Rights Law §296(1)(a) and §296(6).

107. As a result of Defendant Ilik's unlawful acts, Plaintiff suffered damage, including without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life and damage to reputation and career.

## JURY DEMAND

108. Plaintiffs hereby demands trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the ADA and NYSHRL;

(2) Reinstatement to the highest position to which Plaintiff was and would be entitled and/or front pay;

(3) Actual damages in the form of (a) back pay with interest based on Plaintiff's appropriate compensation had he not been wrongfully terminated; (b) reimbursement for lost health benefits, 401K contributions, social security, experience, training opportunities, and other benefits; in an amount to be proved at trial;

(4) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation pursuant to the ADA and NYSHRL in an amount to be proved at trial, but believed to exceed $500,000;

    (5)    Punitive damages pursuant to the ADA and NYSHRL in an amount not less than $1,000,000;

    (6)    Statutory attorneys' fees, costs and disbursements;

    (7)    Interest; and

    (8)    Such additional relief to Plaintiff as the Court deems just and proper.

Dated: March 19, 2023  
       New York, New York

                                    BANTLE & LEVY LLP

                                    By: _____  
                                        Robert L. Levy (RL-1633)  
                                    99 Park Avenue, Suite 1510  
                                    New York, NY 10016  
                                    (212) 228-9666  
                                    *Attorneys for Plaintiff*